IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

------------------------------------------------------------------x

UNITED STATES OF AMERICA

    and

STATE OF NEVADA, DEPARTMENT
OF CONSERVATION AND NATURAL
RESOURCES, DIVISION OF ENVIORNMENTAL
PROTECTION,

          Plaintiffs,

        v.                                          Case No.  3:16-cv-453-MMD-VPC

NEVADA DEPARTMENT OF
TRANSPORTATION,

          Defendant.

------------------------------------------------------------------x

**CONSENT DECREE**

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................ 4

II.     APPLICABILITY ................................................................................... 5

III.    DEFINITIONS ....................................................................................... 6

IV.     COMPLIANCE REQUIREMENTS ........................................................ 9

V.      CERTIFICATION OF REPORTS AND SUBMISSIONS...................... 20

VI.     CIVIL PENALTY ................................................................................ 21

VII.    SUPPLEMENTAL ENVIRONMENTAL PROJECT ............................ 22

VIII.   STIPULATED PENALTIES ................................................................ 23

IX.     FORCE MAJEURE ............................................................................. 26

X.      DISPUTE RESOLUTION .................................................................... 28

XI.     INFORMATION COLLECTION AND RETENTION .......................... 31

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS................ 33

XIII.   MISCELLANEOUS ............................................................................ 34

XIV.    NOTICES ........................................................................................... 35

XV.     EFFECTIVE DATE ............................................................................. 36

XVI.    RETENTION OF JURISDICTION ...................................................... 36

XVII.   MODIFICATION ................................................................................ 37

XVIII.  TERMINATION .................................................................................. 37

XIX.    PUBLIC PARTICIPATION ................................................................. 38

XX.     SIGNATORIES .................................................................................. 39

XXI.    INTEGRATION .................................................................................. 39

XXII.   APPENDICES .................................................................................... 39

XXIII.  FINAL JUDGMENT ........................................................................... 40

2

The United States of America, on behalf of the United States Environmental Protection Agency (EPA), and the State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection (NDEP), by and through its counsel of record, have filed a Complaint in this matter concurrently with this Consent Decree, alleging that the Nevada Department of Transportation (NDOT) has violated Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants in stormwater in violation of the terms of National Pollutant Discharge Elimination System (NPDES) Permit Number NV0023329 which authorizes storm water and certain non-storm water discharges from NDOT's municipal separate storm sewer system (MS4).

In May, 2012, EPA presented an audit report which identified potential deficiencies in NDOT's compliance with the Clean Water Act. Since then, NDOT has worked with EPA, the Nevada Governor's Office, NDEP and others to enhance NDOT's stormwater program and improve regulatory compliance.

The Parties recognize and acknowledge NDOT's significant remedial action which includes, but is not limited to, NDOT's request in 2015 for an additional $13.1 million dollar budget amendment from the Nevada State Legislature to fund a new Stormwater Division within NDOT which was granted.

NDOT states that the approved budget amendment included fifty nine (59) stormwater positions (including a new Deputy Director position to manage NDOT's environmental programs), an allocation of $7.6 million in new stormwater equipment, and additional funding for stormwater related training, operations and travel. NDOT continues to make significant progress on stormwater enhancements in the field. Stormwater improvement projects recently completed or currently under construction add up to over $33 million in expenditures, and nearly

$15 million is allotted for projects scheduled for 2016-2017.

In addition, the Parties recognize that new legislation was enacted which granted NDOT's Director new powers to enforce discharge permitting requirements. These new enforcement powers authorize the Director to conduct an independent investigation of any act that may constitute an unauthorized discharge onto a state highway, within a right-of-way or into, onto or by way of a conveyance system or for a violation of an encroachment permit issued by the Director. The legislation empowers the Director to impose a civil penalty of up to $25,000.00 per day for any violation and further provides that the Director may request that the Nevada Attorney General institute a criminal prosecution of the violation. In addition, the legislation established an Advisory Committee on Transportational Stormwater Management to enhance transparency and communications with affected stakeholders.

By agreeing to entry of this Consent Decree, NDOT makes no admission of law or fact with respect to the allegations in the Complaint. For the purposes of avoiding litigation among the Parties, however, NDOT agrees to the requirements of this Consent Decree.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, without adjudication or admission of any issue of fact or law except as provided in Section I and with the consent of the Parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 33 U.S.C. §§1319 and 1365. This Court has

supplemental jurisdiction over the State law claims asserted by NDEP pursuant to 28 U.S.C. § 1367. Venue lies in this judicial district pursuant to 33 U.S.C. § 1319(b) and under 28 U.S.C. §§ 1391(b), (c) and 1395(a), because the defendant may be found here and because the transactions and occurrences giving rise to the Complaint occurred in this judicial district. For purposes of the Decree and any action to enforce this Decree, NDOT consents to the Court's jurisdiction over this Decree and any such action and over NDOT and consents to venue in this judicial district.

2.     For purposes of this Consent Decree, NDOT agrees that the Complaint states claims upon which relief may be granted pursuant to the Clean Water Act, 33 U.S.C. § 1251 et. seq.

## II.     APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, NDEP, and NDOT and any successor agencies or other entities or persons otherwise bound by law.

4.     Within ten (10) Days of the Effective Date, NDOT shall provide a copy of this Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree. NDOT shall also provide a copy of this Consent Decree to each Contractor retained by NDOT to implement this Decree. NDOT may comply with the preceding sentences by providing a link to a website on which this Consent Decree is posted. If, more than ten (10) Days after the Effective Date, a Contractor is retained by NDOT to implement provisions of this Decree, NDOT shall provide such Contractor a copy of the Decree within ten (10) Days of such retention. NDOT shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.     In any action to enforce this Consent Decree, NDOT shall not raise as a defense the

failure by any of its officers, directors, employees, agents or Contractors to take any actions

necessary to comply with the provisions of this Consent Decree.

### III.   DEFINITIONS

6.      Except as specifically provided in this Decree, definitions for the terms used in this

Decree shall be incorporated from the Clean Water Act and the regulations promulgated pursuant

to the Act. Whenever terms listed below are used in this Decree, the following definitions apply:

"Clean Water Act" or "Act" shall mean the Federal Water Pollution Control Act, as

amended, 33 U.S.C. §§ 1251–1387.

"Complaint" shall mean the complaint filed by the United States and NDEP in this

action.

"Consent Decree" shall mean this Decree and all appendices attached hereto.

"Construction Projects" shall mean any location owned or operated by NDOT at which

there is or will be construction activities including clearing, grading and excavation that result in

ground-disturbing activities greater than or equal to one acre (other than routine maintenance that

results in ground disturbance between one and five acres that is performed to maintain the

original line and grade, hydraulic capacity, or original purpose of the facility), as defined by the

National Pollutant Discharge Elimination System (NPDES) stormwater construction regulations

set forth at 40 C.F.R. § 122.26(b)(14)(x) and (b)(15).

"Construction General Permit" shall mean either the Nevada National Pollutant

Discharge Elimination System (NPDES) General Permit Authorizing Discharges Associated

with Construction Activity or EPA's NPDES General Permit for Discharges from Construction

Activities.

"Contractor" shall mean an entity or natural person who is not an employee of NDOT,

procured by NDOT in order to provide services in support of the specific requirements of this Consent Decree.

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next business day.

"Effective Date" shall have the definition provided in Section XV.

"Encroachment Projects or Encroachment Construction Projects" shall mean any location or portion of a location within NDOT's right-of-way that discharges into NDOT's MS4, not operated by NDOT, at which there is or will be construction activities including clearing, grading and excavation that result in ground-disturbing activities greater than or equal to one acre (other than routine maintenance that results in ground disturbance between one and five acres that is performed to maintain the original line and grade, hydraulic capacity, or original purpose of the facility) as defined by the National Pollutant Discharge Elimination System (NPDES) stormwater construction regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) and (b)(15).

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments, agencies, or instrumentalities.

"Geographic Information System" or "GIS" shall mean any information system that integrates, stores, edits, analyzes, shares, and displays geographic information for informing decision making. GIS applications are tools that allow users to create interactive queries (user-created searches), analyze spatial information, edit data in maps, and present the results of all these operations.

"Large MS4" shall mean the entities covered under the Las Vegas Valley MS4 Permit or

the Truckee Meadows MS4 Permit.

"Major Maintenance Facility" shall mean an NDOT maintenance facility where the facility conducts major equipment repairs and servicing and houses multiple maintenance crews. Activities and operations at these facilities include some or all of the following: major vehicle or equipment repair; vehicle or equipment cleaning at a wash pad, wash rack, or steam pad; storage of vehicles, equipment, or waste material; and fueling.

"Minor Maintenance Facility" shall mean any NDOT maintenance facility described by the MS4 Permit that is not a Major Maintenance Facility.

"MS4 Permit" shall mean the NPDES municipal separate storm sewer system (MS4) permit issued by NDEP to NDOT. Unless otherwise specified, "MS4 Permit" shall refer to the current version.

"NDOT" shall mean the Nevada Department of Transportation, including all of its divisions and regions.

"NDEP" shall mean the Nevada Division of Environmental Protection, including all of its divisions and regions.

"New Development Projects" shall mean Construction Projects that disturb greater than or equal to one acre, or less than one acre if it is part of a larger common plan of development or sale that would disturb one acre or more, which create impervious surface area, as described by the MS4 Permit.

"Notice of Intent" or "NOI" shall mean a form filed with either EPA or NDEP, giving notice that the party identified on the form requests authorization to discharge pursuant to a Construction General Permit.

"Outfall" shall mean "major outfall" as defined by 40 C.F.R. § 122.26(b)(5).

"Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

"Parties" shall mean the United States, on behalf of EPA; NDEP, and NDOT.

"Redevelopment Projects" shall mean Construction Projects that 1) create additional impervious surface area on an already developed roadway or site, or 2) require demolition or complete removal of existing structures or impervious surfaces and replacement with new impervious surfaces or structures, as described by the MS4 Permit.

"Section" shall mean a portion of this Decree identified by a roman numeral.

"State" shall refer to the State of Nevada.

"SWMP" shall mean a Stormwater Management Program Plan developed and implemented as required by NDOT's MS4 Permit and modified as required by this Consent Decree. "2013 SWMP" shall mean the SWMP approved by NDEP on February 15, 2013.

"United States" shall mean the United States of America, acting on behalf of EPA.

"Year" shall mean a calendar year.

## IV.    COMPLIANCE REQUIREMENTS

7.      NDOT shall fully comply with all requirements of the Clean Water Act, including all terms and conditions of applicable NPDES Permits.

8.      Stormwater Management Program Plan (SWMP). NDOT shall modify the 2013 SWMP to integrate changes described in this Consent Decree. The modified SWMP shall be provided to EPA and NDEP no later than 18 months after the effective date of the 2016 NDOT NPDES MS4 Permit. If the effective date of the 2016 MS4 Permit is delayed past June 30, 2016, NDOT will update and provide the SWMP no later than December 31, 2017.

a.      Within 15 days of the date specified above, NDOT shall post the modified SWMP on NDOT's website. Each calendar year, NDOT shall verify that the most recent SWMP is

posted on its website and report in the Annual Report whether a new SWMP has been posted.

9.     Annual Report. NDOT shall post to NDOT's website an Annual Report and notify EPA and NDEP of such posting, beginning with the first Annual Report due after the Effective Date. Annual Reports shall be due to EPA and NDEP on the date required by NDOT's MS4 Permit, and posted on NDOT's website fifteen (15) Days later. The Annual Report shall include, but is not limited to, the information below:

      a.     A quantitative assessment that reports NDOT's activities and whether NDOT met measurable goals, as described in NDOT's MS4 Permit and SWMP.

      b.     A qualitative assessment that incorporates a discussion of how successful NDOT has been in meeting implementation timelines, whether metrics tracked by NDOT are effective in measuring specific activities, and whether specific activities have been effective in reducing the discharge of pollutants from the MS4. Where available, the assessment shall include a discussion of water quality monitoring data, as required by NDOT's MS4 Permit. Where monitoring data is not available, NDOT shall evaluate the need for water quality monitoring in determining SWMP effectiveness.

      c.     The Annual Report shall include a budget broken down by major components of the SWMP.

      d.     The Annual Report shall include a discussion of changes to the SWMP to incorporate new activities, modify existing activities, and verify the current SWMP is posted on NDOT's webpage.

10.    Public Stormwater Education Program. NDOT shall continue to implement the Stormwater Education Program described in the 2013 SWMP, and shall update the SWMP to incorporate the following changes:

10

a.    Enhanced Stormwater Management Website

i.    Within sixty (60) Days of the Effective Date, NDOT shall update and maintain its stormwater management website to include, but not be limited to: 1) links to its NPDES permit and this Consent Decree; 2) the three most recent Annual Reports; 3) links to NDOT's Adopt-A-Highway page and Sponsor-A-Highway page; 4) current versions of NDOT's employee and contractor stormwater training materials; 5) the current version of NDOT's Illicit Discharge Detection and Elimination Field Guide; 6) NDOT's Construction Site BMP Manual and NDOT's Planning and Design Guide; and 7) contacts for reporting possible stormwater violations to NDOT, NDEP, and EPA.

ii.    NDOT shall ensure the stormwater management website is easily accessible by the public, including, but not limited to, a prominent link on NDOT's homepage. NDOT shall provide for a mechanism to track the number of visitors to the webpage and report this information in the Annual Report.

11.    Employee Training. Within 270 Days of the Effective Date, NDOT shall submit to EPA and NDEP, and implement, a Stormwater Certification Program which shall provide specialized training for employees involved in the illicit discharge detection and elimination program, construction site runoff program, post-construction stormwater management program, and operation and maintenance of the MS4, as required by NDOT's MS4 Permit. NDOT shall report the number and types of employees trained each year in the Annual Report.

12.    Construction Site Runoff Control. NDOT shall continue to implement the Construction Site Runoff Control Program described in the 2013 SWMP and shall make and implement the changes described in this Paragraph. The Construction Site Runoff Control Program shall apply to all Construction Projects or Encroachment Construction Projects.

11

a.      Within 270 Days of the Effective Date, NDOT shall ensure that the Construction Site Runoff Control Program includes but is not limited to the following elements: 1) procedures for review of construction plans, including a requirement to use a Construction Stormwater Review Checklist, a requirement to check whether a Notice of Intent to be covered under an applicable Construction General Permit has been filed, and a process for ensuring that Stormwater Pollution Prevention Plans, as required by the applicable Construction General Permit, are reviewed; 2) a requirement that all Construction Projects comply with NDOT's Construction Site BMP Manual; 3) a system to track the location of all active NDOT construction contracts in a manner compatible with NDOT's mapping system, as described in Paragraph 15.b; and 4) a description of the inspection process and follow-up enforcement by NDOT.  NDOT shall use its best efforts to incorporate Encroachment Projects into its tracking system. NDOT shall submit a report to EPA within 270 Days of the Effective Date, describing how the Construction Site Runoff Control Program has been modified.

b.      Construction Site Oversight Inspections: NDOT shall conduct oversight inspections of all Construction Projects with active NDOT construction contracts to ensure that NDOT's contractors or other parties working within NDOT's right-of-way are properly implementing and maintaining BMPs, conducting inspections as required by the Construction General Permit, and otherwise minimizing the discharge of pollutants. Until the plan described in the sentence below is approved, NDOT shall conduct the oversight inspections at least at the same frequency as compliance inspections required by the Construction General Permit. Each inspection shall be documented on a standardized inspection form, developed by NDOT. If NDOT chooses, it can develop a different inspection form for Encroachment Construction Projects. Within 180 days of the Effective Date, NDOT shall submit for review and approval, a

12

plan to prioritize inspections and inspection frequencies of all Construction Projects and Encroachment Construction Projects, which plan shall consider the nature of the construction activity, topography, soil characteristics, and water quality. For this submittal, if EPA has not responded within thirty (30) Days, the plan is approved.

13.    Post-Construction Stormwater Management Program. NDOT shall continue to implement the Post-Construction Stormwater Management Program described in the 2013 SWMP and shall make and implement the changes described in this Paragraph. Within one year of the Effective Date, NDOT shall ensure the Post-Construction Stormwater Management Program includes, but is not limited to, the elements described in this Paragraph. If NDOT chooses, it can update and use NDOT's Planning and Design Guide to comply with this requirement. NDOT shall submit a report to EPA within one year of the Effective Date, describing how the Post-Construction Site Runoff Control Program has been modified.

a.    Project Applicability. NDOT shall require all New Development Projects, Redevelopment Projects, and Encroachment Projects to comply with the Post-Construction Stormwater Management Program. NDOT shall develop and submit a flow-chart or other mechanism to describe the decision making process for determining which classes of New Development Projects, Redevelopment Projects, and Encroachment Projects will be required to install  post-construction BMPs. The Post-Construction Stormwater Management Program shall require the installation of post-construction controls for all New Development Projects or Redevelopment Projects that discharge to impaired waters, and shall require a robust evaluation of the need for post-construction controls for all other areas.

b.    Post-Construction Control Measures and Technical Specifications. NDOT shall develop or adopt technical standards that govern the selection, installation, and maintenance of

13

post-construction control measures implemented for New Development Projects, Redevelopment Projects, and Encroachment Projects. The technical standards shall consider design storm duration and/or intensity, pollutants of concern generated at the site, and maintainability, and shall promote low impact development.

c.      Long-Term Operation and Maintenance. NDOT shall ensure that all New Development Projects and Redevelopment Projects and Encroachment Projects subject to post-construction control measure requirements after the Effective Date, have an operation and maintenance plan, monitoring plan where applicable, and a process of verification of ongoing maintenance of installed controls, which shall include inspections, recorded on an inspection form.

d.      Tracking Database. NDOT shall develop and implement an electronic inventory of post-construction control measures as required by the MS4 Permit. The inventory shall be used to record the location and maintenance obligations for post-construction control measures and be compatible with NDOT's mapping systems.

14.     Illicit Discharge Detection and Elimination. NDOT shall implement the changes described in this Paragraph to the Illicit Discharge Detection and Elimination program described in the 2013 SWMP.

a.      NDOT shall use the current version of NDOT's Illicit Discharge Detection and Elimination Field Guide, which provides a list and description or examples of illicit discharges that are considered to be significant contributors of pollutants to NDOT's MS4, and describes or gives examples of discharges that are prohibited. NDOT shall promote the use of the current version to the general public through publication on NDOT's website.

b.      Field Screening

14

i.   Inspection Plan. Within 180 Days of the Effective Date, NDOT shall develop and implement an Outfall Inspection Plan for dry weather visual inspections. The Outfall Inspection Plan shall: a) identify the division or group within NDOT responsible for conducting the inspections; b) describe inspection and recordkeeping procedures; c) require the use of a standard inspection form and include an example form; and d) include a prioritization plan. The Outfall Inspection Plan shall also include procedures to trace and eliminate illicit discharges.

1)   NDOT shall use a database to record the location, size, and type of pipe, which is compatible with NDOT's mapping system, as described in Paragraph 15.b. As new Outfalls are discovered or installed, they shall be initially inspected, and Outfall information shall be included in the inventory.

2)   When developing the prioritization plan, NDOT shall take into account previous annual dry weather visual inspection data, activities in the watershed of the Outfall, whether the Outfall discharges to impaired or unique waters, and the likelihood that illicit discharges will be present. NDOT shall rank all known Outfalls as high or low priority. At a minimum, all Outfalls with previous dry weather discharges shall be considered high priority Outfalls, unless NDOT has investigated the source and determined the discharge to be authorized. NDOT shall review the prioritization of all known Outfalls on an annual basis. The prioritization plan shall be included in the Annual Report.  Upon implementation, all high priority Outfalls shall be inspected at least once per year and low priority Outfalls shall be inspected at least once every three years.

ii.   Inspection Form. NDOT shall create and maintain records of all Outfall inspections using a standard inspection form, which shall require inspectors to record physical Outfall conditions, any flow characteristics (including color, odor, clarity, solids, foam, oil

sheen, etc.), and information about activities in the surrounding area, including receiving waters. NDOT shall also maintain records of all illicit discharge investigations in the database described by Paragraph 14.b.i(1).

15.     NDOT's Operation and Maintenance Program. Within one year of the Effective Date, NDOT shall develop and implement a Storm Sewer System Operation and Maintenance Program and shall describe the Operation and Maintenance Program in the SWMP.

      a.     NDOT shall ensure that the Operation and Maintenance Program includes procedures for the following activities as required by the MS4 Permit: 1) inspection, cleaning, and routine maintenance of the storm sewer system including roadways, catch basins, storm drain inlets, open channels, washes, culverts, and retention/detention basins; 2) evaluating and conducting erosion abatement projects on slopes greater than 3:1 or where active erosion is occurring or prone to occur; 3) street and highway maintenance in urbanized areas, including sweeping after snow storms; 4) street and highway maintenance in other areas; and 5) maintaining information about the types and quantities of abrasives and/or deicing agents used.

      b.     Storm Sewer System Mapping. Within thirty (30) Days of the Effective Date, NDOT shall submit for review and approval, a schedule to develop a comprehensive storm sewer system map that identifies all NDOT assets including inlets, pipes, above ground drainage features, Outfalls, post-construction control measures, maintenance facilities (including salt/sand storage), and material pits (to the extent they impact the storm sewer system). The schedule shall also include a date by which the map will include locations where NDOT Outfalls discharge to impaired waters. The schedule shall describe tasks to be completed on a semi-annual basis. The schedule shall discuss the process by which NDOT will ensure that new assets are added to the map. For this submittal, if EPA has not responded within thirty (30) Days, the schedule is

approved.

i.     The map shall be developed in a geographic information system (GIS) format and include relevant information for each asset class. For pipes, drainage features and Outfalls, information shall include the type of material and size. The map shall identify adjacent Large MS4s.

ii.     The schedule shall ensure NDOT has all Outfalls and associated drainage features mapped by December 31, 2016, with the entire map  (all Outfalls and associated drainage features as well as  maintenance facilities, material pits and impaired waters) to be completed by December 31, 2018.

c.     Storm Sewer System Inspections and Maintenance. NDOT shall conduct periodic physical inspections of the storm sewer system, including storm water conveyances, catch basins, storm drain inlets, open channels, washes, culverts, and retention/detention basins, to identify structural defects, trash and debris accumulation, and other constraints that limit the flow of stormwater or are potential sources of pollutants. In addition to any periodic inspections, NDOT shall conduct maintenance and cleaning as needed. At a minimum, NDOT shall identify high priority components of the storm sewer system for annual inspections and cleaning. High priority components are locations where there is a greater risk for discharge of pollutants, based on such factors as the types of activities in the sub-watershed or proximity to impaired waters. Newly identified high priority components shall be listed in the Annual Report. High priority components shall be inspected at least once per year and cleaned in accordance with the Operation and Maintenance Program.

d.     NDOT shall conduct annual inspections of at least five (5) post construction BMPs, (such as retention basins) using Unmanned Aerial Vehicles (UAV) or other means.

17

NDOT shall record the condition of inlet and outlet structures, side slopes and the basin floor to determine the level of erosion, sediment, or debris in the basin. If NDOT uses UAVs, NDOT shall 1) collect imaging and 3-D terrain modeling data to demonstrate the condition of the basin and 2) submit a report to EPA and NDEP, no later than August 31, 2018, evaluating the usefulness of UAVs in conducting inspections of post-construction BMPs.

16.   Maintenance Facilities. Within thirty (30) Days of the Effective Date, NDOT shall submit for review and approval: 1) NDOT's Facility Pollution Prevention Plan (Plan) which shall describe maintenance facilities covered under the Plan and the process for storm water pollution prevention plan development, inspections, and corrective action where needed; and 2) NDOT's Maintenance Facility BMP Manual which shall describe BMPs to be implemented at various facilities.

a.   NDOT shall ensure that all maintenance facilities receive an annual comprehensive inspection which takes into account the results of any more frequent inspections. NDOT shall also inspect all Major Maintenance Facilities on a quarterly basis, and Minor Maintenance Facilities at least one time per year in addition to the annual comprehensive inspection. NDOT shall use a standard inspection form, and indicate (by title) the entity responsible for conducting the inspection.

b.   NDOT shall also ensure that the updated SWMP includes a list of all maintenance facilities, including all vehicle maintenance facilities, asphalt and concrete batch plants, solid waste transfer stations (including decant facilities), and active exposed material stockpiles. The list shall be sorted into Major Maintenance Facilities and Minor Maintenance Facilities and the SWMP shall describe the methodology for the designation.

17.   Quarterly Reporting. Once per quarter, starting the first full calendar quarter after the

Effective Date and continuing until the Consent Decree is terminated in accordance with Section XVIII (Termination), NDOT, NDEP and EPA shall have quarterly meetings to discuss progress in complying with the terms of this Consent Decree. In-person meetings are not required. The meeting shall be held after the end of each calendar quarter. Ten (10) Days prior to each quarterly meeting, NDOT shall provide to EPA and NDEP a report that includes 1) a list of all tasks required by Paragraphs 8-17 and Appendix A of the Consent Decree to be completed that quarter, 2) whether or not specific deadlines for each task were met, and 3) a list of all tasks due the next quarter.

18.     Deliverables.  For any plan, report, or other item that is required to be submitted to EPA pursuant to this Consent Decree, NDOT shall incorporate EPA's and NDEP's comments, if any. EPA shall submit comments within thirty (30) Days. For any plan, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA, after consultation with NDEP, shall in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

         a.      If the submission is approved pursuant to Subparagraph (i) above, NDOT shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Subparagraph (ii) or (iii), NDOT shall, upon written direction of EPA, after consultation with NDEP, take all actions required by the approved plan, report, or other item that EPA, after consultation with NDEP, determines are technically severable from any disapproved portions or conditions placed on conditionally approved portions, subject to NDOT's right to dispute only the specified conditions or the

disapproved portions under Section X (Dispute Resolution).

b. If the submission is disapproved in whole or in part pursuant to Subparagraph (iii) or (iv), NDOT shall, within thirty (30) days or such other time as agreed to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Subparagraph. If the resubmission is approved in whole or in part, NDOT shall proceed in accordance with the preceding Subparagraph.

c. Any Stipulated Penalties applicable to the original submission, as provided in Section VIII (Stipulated Penalties), shall accrue during the 30-day period or other period specified for resubmission, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of NDOT's obligations under this Decree, the Stipulated Penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

d. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with NDEP, may again require NDOT to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to NDOT's right to invoke Dispute Resolution and to the right of EPA and NDEP to seek Stipulated Penalties as provided in the preceding Paragraphs.

## V. CERTIFICATION OF REPORTS AND SUBMISSIONS

19. Except as otherwise expressly provided in this Consent Decree, any report or other document submitted by NDOT pursuant to this Decree that makes any representation concerning compliance or noncompliance with any requirement of this Decree, the Act or its implementing regulations, or any applicable permit, shall be certified by a Responsible Officer of NDOT. The

certification shall be in the following form:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

## VI.    CIVIL PENALTY

20.    NDOT shall pay a civil penalty of $120,000 which shall be split between the United States and NDEP as described below.

21.    Within seven (7) days after the Effective Date, NDOT shall pay to the United States a civil penalty of $60,000, plus interest accruing from the date on which this Consent Decree is lodged with the Court. Interest shall be calculated in accordance with the rate specified in 28 U.S.C. § 1961.

    a.    Payment shall be made by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with instructions to be provided to NDOT, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Nevada. At the time of payment, NDOT shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States et al. v. Nevada Department of Transportation*, and shall reference the DOJ case number 90-5-1-1-11031, to the United States in accordance with Section XIV of this Decree (Notices); by email to cinwd_acctsreceivable@epa.gov; and by mail to:

21

EPA Cincinnati Finance Office
26 West Martin Luther King Drive
Cincinnati, OH 45268

22.     Within ten (10) days after the Effective Date, NDOT shall pay to NDEP a civil penalty of $60,000, plus interest accruing from the date on which this Consent Decree is lodged with the Court. Interest shall be calculated in accordance with the rate specified in 28 U.S.C. § 1961.

a.     At least three business days in advance, NDOT shall notify NDEP of its intent to make payment. Upon receiving such notice, NDEP shall submit a Journal Voucher Document (JVD) to NDOT and NDOT will then complete its portion of the JVD and submit to the State Controller to process transfer of funds.

## VII.     SUPPLEMENTAL ENVIRONMENTAL PROJECT

23.     NDOT shall implement a Supplemental Environmental Project (SEP), Real-Time Water Quality Data Availability, in accordance with all provisions of Appendix A.

a.     NDOT is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  NDOT may use contractors or consultants in planning and implementing the SEP.

b.     With regard to the SEP, NDOT certifies the truth and accuracy of each of the following:

i.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that NDOT in good faith estimates that the cost  to implement the SEP is $200,000;

ii.     that, as of the date of executing this Decree, NDOT is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any

22

forum;

      iii.    that the SEP is not a project that NDOT was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

      iv.    that NDOT has not received and will not receive credit for the SEP in any other enforcement action;

      v.    that NDOT will not receive any reimbursement for any portion of the SEP from any other person; and

      vi.    that NDOT is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEP described in Appendix A. For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

## VIII.    STIPULATED PENALTIES

24.    NDOT shall be liable for stipulated penalties to the United States and NDEP for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedule established by or approved under this Decree. NDOT shall pay Stipulated Penalties in the following amounts:

      a.    For failure to pay the civil penalty required under Section VI (Civil Penalty) when due: $1,000 for each day that the payment is late;

      b.    For each failure to complete a task as required by Paragraphs 8-17 and Appendix A of the Consent Decree and as identified during the quarterly meeting described by Paragraph

17:

  i.  Failure to complete one (1) task: $7,500;

  ii.  Failure to complete 2-3 tasks: $25,000

  iii.  Failure to complete more than three (3) tasks: $40,000.

25.  If NDOT has not completed the task(s) identified as incomplete in the previous quarterly meeting within 90 Days, the amounts in Paragraph 24.b shall be doubled, and shall continue to double quarterly until the task is completed.

26.  NDOT shall pay stipulated penalties to the United States and NDEP within thirty (30) Days of a written demand by either Plaintiff. Defendant shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to NDEP. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

27.  Either Plaintiff may, in the un-reviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

28.  NDOT shall pay Stipulated Penalties owing to the United States by EFT in accordance with Section VI (Civil Penalty), Paragraph 21, above. Any payment of Stipulated Penalties shall be accompanied by a transmittal memorandum referencing DOJ No. 90-5-1-1-11031 and United States Attorney's Office file number [ 2016 V00196 and stating that payment of Stipulated Penalties is being made and describing the violations for which payment is being made.

29.  NDOT shall pay Stipulated Penalties owing to NDEP by Journal Voucher (JVD). NDEP shall submit a JVD to NDOT and NDOT will then complete its portion of the JVD and submit to the State Controller to process transfer of funds.

30.  Interest. If NDOT fails to pay Stipulated Penalties according to the terms of this Consent

Decree, NDOT shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or NDEP from seeking any remedy otherwise provided for by law for NDOT's failure to pay any stipulated penalties.

31.     The payment of Stipulated Penalties shall not alter in any way NDOT's obligation to comply with the requirements of this Decree.

32.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or NDEP (including but not limited to, statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt) for NDOT's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Water Act, NDOT shall be allowed a credit for any Stipulated Penalties paid against any statutory penalties imposed for such violation.

33.     Stipulated Penalties shall continue to accrue during any dispute resolution period, but need not be paid until the following:

     a.     If the dispute is resolved by agreement or by a decision of the United States or NDEP that is not appealed to this Court, NDOT shall pay accrued Stipulated Penalties determined to be owing to the United States or NDEP within fifteen (15) Days of the agreement or the receipt of EPA's decision or order;

     b.     If the dispute is appealed to the Court and the United States or NDEP prevails in whole or in part, NDOT shall pay all accrued Stipulated Penalties determined by the Court to be owed to the United States or NDEP within thirty (30) Days of receipt of the Court's decision or

order, except as provided in Subparagraph c, below;

c.     If any Party appeals the District Court's decision, NDOT shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

## IX.     FORCE MAJEURE

34.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of NDOT, its Contractors, or any entity controlled by NDOT that delays or prevents the performance of any obligation under this Consent Decree despite NDOT's best efforts to fulfill the obligation. The requirement that NDOT exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include NDOT's financial inability to perform any obligation under this Consent Decree.

35.     If any event occurs or has occurred that may delay the performance of any obligation in Paragraphs 8-17, whether or not caused by a Force Majeure event, NDOT shall notify (orally or by email) David Wampler at (415) 972-3975 or Wampler.david@epa.gov and Bruce Holmgren at (775) 687-9433 or Bholmgre@ndep.nv.gov within 72 hours after the time NDOT first knew of, or in the exercise of reasonable diligence under the circumstances should have known of, any event that might delay completion of any requirement of this Decree, whether or not caused by a Force Majeure event.  The United States or NDEP may designate alternative representatives to receive oral notification at their discretion by sending NDOT a written designation in accordance with Section XIV (Notices). Within seven (7) days thereafter, NDOT shall provide in writing to

EPA and NDEP an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; NDOT's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of NDOT, such event may cause or contribute to an endangerment to public health, welfare or the environment. NDOT shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude NDOT from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. NDOT shall be deemed to know of any circumstance of which NDOT, any entity controlled by NDOT, or NDOT's Contractors knew or should have known.

36.     If EPA, after a reasonable opportunity for review and comment by NDEP, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA  for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify NDOT in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

37.     If EPA, after a reasonable opportunity for review and comment by NDEP, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify NDOT in writing of its decision.

38.     If NDOT elects to invoke Dispute Resolution, it must do so no later than fifteen (15) Days after receipt of the United States' notice. In any such dispute, NDOT bears the burden of proving, by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that NDOT complied with the requirements of Paragraphs 34 and 35. If NDOT carries this burden, the delay at issue shall be deemed not to be a violation by NDOT of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.     DISPUTE RESOLUTION

39.     Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. NDOT's failure to seek resolution of a dispute under this Section shall preclude NDOT from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

40.     Informal Dispute Resolution.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when NDOT sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) days from the date the dispute arises, unless that period is modified by written agreement of the United States and NDOT. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fifteen (15) days after the conclusion of the informal negotiation period, NDOT invokes formal dispute resolution procedures set forth in Paragraph 41,

28

below.

41.     Formal Dispute Resolution.

        a.     Within fifteen (15) days after the conclusion of the informal negotiation period, NDOT may invoke formal dispute resolution procedures by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting NDOT's position and any supporting documentation relied upon by NDOT.

        b.     The United States shall serve its Statement of Position within 45 Days of receipt of NDOT's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.

        c.     Following receipt of all Statements of Position submitted pursuant to Paragraphs 41 a and b above, EPA's Enforcement Division Director will issue a final decision resolving the dispute. The Enforcement Division Director's decision shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

42.     Petitions to the Court.  In the event that the Parties cannot resolve a dispute by informal or formal negotiations as set forth above, the following procedures shall apply:

        a.     NDOT may seek judicial review of the dispute by filing with the Court and serving on the United States, a Motion requesting judicial resolution of the dispute.  The Motion shall be filed within ten (10) Days of receipt of the Enforcement Division Director's decision set forth in Paragraph 41.c, above.

        b.     The Motion shall attach all Statements of Position, the Enforcement Division

Director's decision, and shall contain a written statement of NDOT's position on the matter in dispute, including any supporting factual data, analysis, opinion, and documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  NDOT shall serve such Motion on the United States electronically and by overnight delivery.

      c.      The United States shall respond to NDOT's Motion within the time period allowed by the Local Rules of the Court.

      d.      NDOT may file a reply memorandum to the extent permitted by the Local Rules.

      e.      Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 42 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, NDOT shall have the burden of demonstrating, based on the administrative record, that the decision of the Enforcement Division Director is arbitrary and capricious or otherwise not in accordance with law.

      f.      Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 42, NDOT shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

43.      Effect on Other Obligations.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of NDOT under

this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided above. If NDOT does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

44. The United States and NDEP, and their representatives, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or NDEP in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by NDOT or its representatives, Contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data; and

e. assess NDOT's compliance with this Consent Decree.

45. Upon request, NDOT shall provide EPA or NDEP, or their authorized representatives, splits of any samples taken by NDOT. Upon request, EPA or NDEP shall provide NDOT splits of any samples taken by EPA or NDEP.

46. Until five (5) years after the termination of this Consent Decree, NDOT shall retain, and shall instruct its Contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its Contractors' or agents' possession or control, or that come into its or its

31

Contractors' or agents' possession or control, and that relates in any manner to NDOT's perfor-

mance of its obligations under this Consent Decree.  This information-retention requirement

shall apply regardless of any contrary institutional policies or procedures.  At any time during

this information-retention period, the United States may request copies of any documents,

records, or other information required to be maintained under this Paragraph.

47.     At the conclusion of the information-retention period provided in the preceding

Paragraph, NDOT shall notify the United States and NDEP at least ninety (90) days prior to the

destruction of any documents, records, or other information subject to the requirements of the

preceding Paragraph and, upon request by the United States or NDEP, NDOT shall deliver any

such documents, records, or other information to EPA or NDEP.  NDOT may assert that certain

documents, records, or other information is privileged under the attorney-client privilege or any

other privilege recognized by federal law.  If NDOT asserts such a privilege, it shall provide the

following: (1) the title of the document, record, or information; (2) the date of the document,

record, or information; (3) the name and title of each author of the document, record, or

information; (4) the name and title of each addressee and recipient; (5) a description of the

subject of the document, record, or information; and (6) the privilege asserted by NDOT.

However, no documents, records, or other information created or generated pursuant to the

requirements of this Consent Decree shall be withheld on grounds of privilege.

48.     NDOT may also assert that information required to be provided under this Section is

protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2.  As to any

information that NDOT seeks to protect as CBI, NDOT shall follow the procedures set forth in

40 C.F.R. Part 2.

49.     This Consent Decree in no way limits or affects any right of entry and inspection, or any

32

right to obtain information, held by the United States pursuant to applicable federal or State laws,

regulations, or permits, nor does it limit or affect any duty or obligation of NDOT to maintain

documents, records, or other information imposed by applicable federal or State laws,

regulations, or permits.

## XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

50.   This Consent Decree resolves the civil claims of the United States and NDEP for the

violations alleged in the Complaint filed in this action through the date of lodging.

51.   The United States and NDEP reserve all legal and equitable remedies available to enforce

the provisions of this Consent Decree, except as expressly stated in Paragraph 50.  This Consent

Decree shall not be construed to limit the rights of the United States or NDEP to obtain penalties

or injunctive relief under the Act or its implementing regulations, or under other federal or State

laws, regulations, or permit conditions, except as expressly specified in Paragraph 50. The

United States and NDEP further reserve all legal and equitable remedies to address any imminent

and substantial endangerment to the public health or welfare or the environment arising at, or

posed by, NDOT's facilities, whether related to the violations addressed in this Consent Decree

or otherwise.

52.   In any subsequent administrative or judicial proceeding initiated by the United States  or

NDEP for injunctive relief, civil penalties, other appropriate relief relating to NDOT's violations,

NDOT shall not assert, and may not maintain, any defense or claim based upon the principles of

waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or

other defenses based upon any contention that the claims raised by the United States or NDEP in

the subsequent proceeding were or should have been brought in the instant case, except with

respect to claims that have been specifically resolved pursuant to Paragraph 50.

53.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  NDOT is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and NDOT's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and NDEP do not, by consent to the entry of this Consent Decree, warrant or waive in any manner that NDOT's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Water Act or its implementing regulations or with any other provisions of federal, State, or local laws, regulations, or permits.  Notwithstanding the United States and NDEP's review and approval of any data, reports, or plans submitted pursuant to this Decree, NDOT shall remain solely responsible for its compliance with this Decree.

54.     This Consent Decree does not limit or affect the rights of NDOT or of the United States or NDEP against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against NDOT, except as otherwise provided by law.

55.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

### XIII.     MISCELLANEOUS

56.     Headings.  Headings in this Decree are provided for convenience only and shall not affect the substance of any provision.

57.     Costs of Suit.  The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and NDEP shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any

34

1  Stipulated Penalties due but not paid by NDOT.

2  **XIV.      NOTICES**

3
4  58.      Unless otherwise specified in this Decree, whenever notification, submission, or

5  communication is required by the terms of this Decree, such notification, submission, or

6  communication shall be addressed to the following at the addresses specified below (or to such

7  other addresses as may be thereafter designated by written notice to the parties):

8      As to the United States:

9
10  By email: eescdcopy.enrd@usdoj.gov
           Re: DJ # 90-5-1-1-11031

11
12  By mail: EES Case Management Unit
   Environment and Natural Resources Division
13  U.S. Department of Justice
   P.O. Box 7611
14  Washington, D.C. 20044-7611
   Re: DJ # 90-5-1-1-11031

15
16  As to EPA:

17  Chief, Water II Enforcement Office
   Enforcement Division, ENF 3-2
18  U.S. EPA, Region 9
   75 Hawthorne St.
19  San Francisco, CA 94105
   Wampler.david@epa.gov
20
21  Connor Adams,
   Enforcement Division, ENF 3-2
22  U.S. EPA, Region 9
   75 Hawthorne St.
23  San Francisco, CA 94105
   Adams.connor@epa.gov
24
25  As to NDEP:

26  Bruce Holmgren, Bureau Chief
27  Bureau of Water Pollution Control
   Nevada Division of Environmental Protection
28  901 S. Stewart St, Suite 4001

Carson City, NV 89701
Bholmgre@ndep.nv.gov

As to NDOT:

Dave Gaskin, Deputy Director
Nevada Department of Transportation
1263 South Stewart Street
Carson City, NV  89712
dgaskin@dot.state.nv.gov

59.     Notifications to or communications with NDOT, EPA, NDEP, or the United States shall be deemed submitted:

    a.      when sent by mail, on the date they are postmarked and sent by certified mail, return receipt requested;

    b.      when sent by overnight delivery, on the date they are picked up by the overnight delivery service; or

    c.      when made electronically, on the date they are sent by electronic mail with confirmation of receipt.

## XV.     EFFECTIVE DATE

60.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.     RETENTION OF JURISDICTION

61.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

36

1

2

### XVII.    MODIFICATION

3

4

62.    The terms of this Consent Decree may be modified only by a subsequent written

5

agreement signed by all the Parties. The deadlines set forth in Section IV (Compliance

6

Requirements) of this Consent Decree may be modified, and those and other non-material

7

modifications of this Decree shall be made by written agreement of the parties with notification

8

to the Court. Where the modification constitutes a material change to this Decree, it shall be

9

effective only upon approval by the Court.

10

11

63.    Any disputes concerning modification of this Decree shall be resolved pursuant to

12

Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided

13

by Paragraph 42, the Party seeking the modification bears the burden of demonstrating that it is

14

entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

15

### XVIII.    TERMINATION

16

17

64.    Request to Terminate Decree.  By December 31, 2018 or when NDOT has completed the

18

compliance requirements described in Paragraphs 8-17, NDOT may request the United States

19

and NDEP's consent to termination of this Decree.  In seeking such consent, NDOT shall

20

provide a written report to the United States and NDEP that demonstrates:

21

22

  a.  NDOT has paid all civil penalties, Stipulated Penalties, and interest due under this

23

Decree;

24

  b.  There are no unresolved matters subject to Dispute Resolution pursuant to Section

25

X (Dispute Resolution);

26

  c.  No enforcement action under this Decree is pending; and

27

28

  d.  NDOT has fully and successfully completed the compliance requirements set

37

forth in Section IV (Compliance Requirements) and Appendix A.

65.    Response to Request for Termination

a.    Following receipt by the United States and NDEP of NDOT's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether NDOT has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with NDEP, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

b.    If the United States, after consultation with NDEP, does not agree that the Decree may be terminated, NDOT may invoke Dispute Resolution under Section X of this Decree. However, NDOT shall not seek Dispute Resolution of any dispute regarding termination until sixty (60) days after service of its Request for Termination.

### XIX.    PUBLIC PARTICIPATION

66.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. NDOT consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

// //

// //

38

## XX.   SIGNATORIES

67.   Each undersigned representative of NDOT, NDEP, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

68.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. NDOT agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that NDOT need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.   INTEGRATION

69.   This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the Appendices, which are attached to and incorporated in this Decree, and submittals that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.   APPENDICES

70.   Appendix A is attached to and incorporated into this Consent Decree.

39

# XXIII.    FINAL JUDGMENT

71.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, NDEP, and NDOT.


SO ORDERED THIS ____13th____ DAY OF ____September_____, 2016

_____
UNITED STATES DISTRICT JUDGE

40

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 66 of this Decree:


FOR THE UNITED STATES OF AMERICA


Date: _____

JOHN C. CRUDEN
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
Division
Washington, D.C.  20530


Date: 7/26/16

LORI JONAS
Senior Attorney
United States Department of Justice
Environmental and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C.  20044

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 66 of this Decree:

Date: ___5 · 26 - 16___    _____

MARK POLLINS
Director
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

1  We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment
2  Provisions of 28 C.F.R. § 50.7 and Paragraph 66 of this Decree:

3

4

5  Date: 31 May 2016

6                                             ALEXIS STRAUSS
                                              Acting Regional Administrator
7                                             U.S. Environmental Protection Agency, Region 9
                                              75 Hawthorne Street
8                                             San Francisco, California  94105

9

10 Date: 05/17/2016

11                                            ELLEN BLAKE
                                              Assistant Regional Counsel
12                                            U.S. Environmental Protection Agency,
                                              Region 9
13                                            75 Hawthorne Street
                                              San Francisco, California  94105
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       43

1    We hereby consent to entry of the foregoing Consent Decree:

2

3                                    FOR THE NEVADA DIVISION OF ENVIRONMENTAL
                                     PROTECTION
4

5

6    Date: 7/12/16

7                                    DAVE EMME
                                     Administrator
8                                    Nevada Division of Environmental Protection

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    We hereby consent to entry of the foregoing Consent Decree:

2

3                                              FOR THE NEVADA DIVISION OF ENVIRONMENTAL
                                               PROTECTION
4

5

6    Date: _____

7                                              DAVE EMME
                                               Administrator
8                                              Nevada Division of Environmental Protection

9

10   Approved as to Form:

11   Date: 7/28/16

12                                             KATIE S. ARMSTRONG
                                               Deputy Attorney General
13                                             Nevada Attorney General's Office

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     44

We hereby consent to entry of the foregoing Consent Decree:

FOR THE NEVADA DEPARTMENT OF
TRANSPORTATION

Date: 7-12-16

_____
RUDY MALFABON
Director
Nevada Department of Transportation

Approved as to Legality and Form:

Date: 7/12/16

_____
DENNIS GALLAGHER
Chief Deputy Attorney General
Nevada Attorney General's Office

45

52

**Appendix A**

**Making Continuous Real-time Water Quality Data Available to the Public**

1. Purpose.  This project consists of upgrades to water quality monitoring devices to provide

   continuous monitoring and transmit the data to a central location to be uploaded to a

   publicly available platform. Real-time data from continuous monitoring can be used to

   improve the understanding of temporal variances in hydrology and water quality and can

   lead to more effective resource management, including improving the design and

   selection of stormwater BMPs. The purpose of this supplemental environmental project

   (Project) is to 1) collect continuous water quality data and make it available to the public

   in real-time, 2) evaluate the benefits of making this data available in real-time through an

   online interface, and 3) provide and evaluate the effectiveness of real-time notifications

   to appropriate personnel when certain monitoring data and/or equipment operational

   thresholds are exceeded. NDOT will evaluate the usefulness of posting the data on a

   publicly available website by measuring how often the webpage is visited as well as

   through formation of a Project Evaluation Group (PEG). NDOT will evaluate how PEG

   members use the data and, through the PEG, explore whether other types of data would

   be useful.

2. NDOT shall develop, install, and maintain:1) hardware and software to remotely operate

   and calibrate monitoring equipment and to transmit monitoring data; 2) sensors and any

   hardware or other modifications to monitoring sites in order to provide continuous

   monitoring of hydrologic, hydraulic and water quality data; 3) a Data Management

   System (DMS) to retrieve, store and access data in order to make selected data available

   to the public; and 4) a publicly-available web page to display the water quality

monitoring data. NDOT shall analyze and evaluate the continuous monitoring data and coordinate with other MS4s and other interested parties through formation of a PEG. NDOT shall prepare a project completion report summarizing the results of the Project including an evaluation of the Project benefits, as set forth in Appendix A, Paragraph 5.

3. <u>Planning</u>. By July 1, 2016, NDOT shall provide a Plan to EPA and NDEP for review and approval in accordance with Paragraph 18 (Deliverables), describing:

   a. At least three (3) locations where NDOT proposes to implement the Project, including a narrative justification for choosing each location. NDOT shall choose locations where the data will be most useful such as areas with sensitive or impaired waters and/or a large urban population. If the location changes during project planning, NDOT will send a revised Plan describing the new sites to EPA for review and approval;

   b. A description of the specific data that will be collected at each monitoring location. All sites shall, at a minimum, include sensors for continuous monitoring of: precipitation, flow rate and/or water level, air temperature, humidity, and water temperature. In addition, each site will contain at least one continuous monitoring sensor that will measure a water quality parameter (or its surrogate) other than temperature, such as: pH, conductivity, turbidity, dissolved oxygen, or other parameters;

   c. A description of which real-time data will be posted on a publicly available website;

   d. A description of how NDOT will determine when real-time notification of NDOT personnel will occur, describing which monitoring data and/or equipment

2

operational thresholds will trigger the notification;

    e.   A description, by job title, of which NDOT personnel will receive real-time notifications when monitoring data and/or equipment operational thresholds are exceeded; and

    f.    A description of the list of the members invited to join the PEG. At a minimum, NDOT shall invite a representative from each of the regulated MS4s in Nevada and NDEP. NDOT shall consider inviting other interested parties in the watersheds of the Project locations to participate in the PEG.

4.   <u>Project</u>. NDOT shall operate the Project for a minimum of twelve (12) months in accordance with the Plan described in Appendix A, Paragraph 3. During the Project, NDOT shall convene the PEG at least three (3) times. NDOT shall:

    a.   Develop and implement a Data Management System (DMS) to retrieve, store and provide access to the continuous monitoring data. The DMS shall also be capable of connecting to future water quality monitoring devices to provide wider geographic coverage.

    b.   Develop a publicly accessible web interface to display the continuous water quality monitoring data, as described by the Plan. The webpage shall link from NDOT's webpage.

    c.   By June 1, 2017, install and maintain hardware and software at a minimum of three (3) sites as identified in the Plan, with the following capabilities:

        i.   Transmittal of continuous water quality data to the DMS, as identified in the Plan. Selected data, as described in the Plan, shall be available on the publicly accessible website within one (1) hour of sample collection;

       ii.  Remote operation and calibration of monitoring equipment as needed; and

      iii.  Providing real-time notifications to designated NDOT personnel when water quality and/or operational parameters are exceeded, as described in the Plan.

5. <u>Completion Report</u>. No later than July 31, 2018, NDOT shall submit a Completion Report to EPA and NDEP which includes:

    a.  a detailed description of the Project as implemented, including 1) the number of visits to the publicly accessible webpage that hosts the real-time water quality data, 2) the number of alerts, if any, provided to the appropriate personnel when operational or water quality parameters were exceeded including what actions resulted, if any, from the alert; and 3) an evaluation of the overall Project, including feedback from the PEG;

    b.  an itemized list of all eligible Project costs expended;

    c.  certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

    d.  a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).